FILED
2020 Aug-20  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RICHARD J. MCCLINTON, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO.: 2:20-cv-00543-AMM |
| | ) | |
| v. | ) | |
| | ) | |
| COGENCY GLOBAL INC, | ) | JURY DEMAND |
| D/B/A CAPSTONE LOGISITICS, | ) | |
| LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## FIRST AMENDED COMPLAINT

## I. JURISDICTION

This is a suit authorized and instituted pursuant to the Age Discrimination in Employment Act ("ADEA"),  the Americans with Disabilities Act ("ADA"), and the Americans with Disabilities Act Amendments Act ("ADAAA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by the ADEA and ADA/ADAAA providing injunctive and other relief against age discrimination, discrimination based on disability, and retaliation in employment.

1

## II.  PARTIES

1.      Plaintiff, Richard J. McClinton, hereinafter "PLAINTIFF" is a male citizen of the United States and is a resident of Bessemer, Alabama.

2.      Defendant, Capstone Global Inc., d/b/a Capstone Logistics LLC, hereinafter "DEFENDANT", is a foreign  corporation doing business in the state of Alabama. At all times relevant to this action, Defendant has maintained and operated a business in Alabama. Defendant is engaged in an industry affecting commerce and have fifteen (15) or more employees and are employers within the meaning of 42 U.S.C. § 2000e(b)(g) and (h). Defendant is subject to the "Age Discrimination in Employment Act" in that it is engaged in an industry affecting commerce and has had twenty (20) or more employees for each working day in each twenty (20) or more calendar weeks in the current and preceding calendar years.

## III. ADMINISTRATIVE PROCEDURES

3.      Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination and retaliation that occurred at the Defendant's worksite located in Bessemer, Alabama.

4.      This action seeks to redress unlawful employment practices resulting from the acts of Defendant, its agents, servants, and employees committed with respect to Plaintiff's employment; and for a permanent injunction restraining Defendant from maintaining a habit and/or practice of discriminating against the

Plaintiff and others similarly situated on account of disability and retaliation.

5.      On August 20, 2019, within 180 days of the last discriminatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). (Doc 1-1, Exhibit A).

6.      On October 31, 2019, Plaintiff filed an Amended Charge of Discrimination with the EEOC. (Doc 1-2, Exhibit B).

7.      On January 23, 2020, Plaintiff's Notice of Right to Sue was mailed by the EEOC to Plaintiff and Plaintiff filed his initial lawsuit within ninety (90) days of receipt of his Notice of Right to Sue. (Doc 1-3, Exhibit C).

8.      All administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## IV.  FACTS

9.      In or around July 31 2017, Plaintiff began working for the Defendant as the Night Shift Supervisor at the Dollar General Warehouse.

10.     Plaintiff is a forty-four (44) year old male.

11.     Plaintiff's job was to supervise approximately twenty (20) employees.

12.     These employees lifted and unloaded boxes of merchandise off of commercial trucks by way of a forklift, pallet jack, or specialized equipment.

13.     Some of Plaintiff's job duties included payroll, issuing disciplinary actions, checking attendance, and walking throughout the warehouse in order to

oversee the operations of his employees.

14.   Plaintiff was a salaried shift supervisor for Defendant.

15.   In or around January of 2019, Plaintiff told his direct supervisor, Mr. Donald Langley, that he needed back surgery.

16.   Mr. Langley told Plaintiff that nobody was getting time off and he needed him at work.

17.   In or around February 25, 2019, Plaintiff had back surgery.

18.   Plaintiff's laminectomy surgery required four (4) screws and two (2) rods to be securely fastened to his vertebrae.

19.   In or around March 18, 2019, Plaintiff was given a Fit for Duty Release document from Defendant for his doctor to fill out.

20.   Plaintiff's doctor placed limitations on his return to work.

21.   Plaintiff's restrictions prevented him from lifting any objects over five (5) pounds for an extended period of three and a half (3.5) hours while bending, stooping, kneeling, and lifting; removing pallets of merchandise with a forklift safely; removing items off of pallets; or enduring similar types of physical stress until a follow up visit with his doctor on April 30, 2019.

22.   In or around March 25, 2019, Plaintiff returned to work.

23.   Upon returning to work, Plaintiff resumed working his regular four (4) night shifts per week.

24.     In addition to Plaintiff's four (4) night shifts per week, his employer scheduled him to work two (2) additional thirteen (13) hour day shifts, on Saturday and Sunday.

25.     Plaintiff's workload increased from forty-eight (48) hours, to seventy-four (74) hours per week once returning from surgery.

26.     Plaintiff continued to function and operate efficiently at his job.

27.     In or around April 11, 2019, Plaintiff complained to Mr. Langley about the post-surgery increase in workload.

28.     Plaintiff asked Mr. Langley if he could adjust the schedule to equal out the time between the day shift and night time supervisors.

29.     Mr. Langley told Plaintiff "no" and that he "didn't have time for this."

30.     In or around April 15-16, 2019, Plaintiff woke up with severe back and leg pain, called his doctor, and called in sick to work with a doctor's excuse.

31.     In or around April 17, 2019, Plaintiff's pain was worse and his wife drove him to the Emergency Room.

32.     Plaintiff again called his doctor and called in sick to work with a doctor's excuse.

33.     In or around April 18, 2019, Plaintiff went back to work.

34.     Plaintiff asked Mr. Langley if he could use a walking cane or crutches to help him walk while he was at work.

35.     Mr. Langley denied his request for accommodations.

36.     Plaintiff complained to Mr. Langley that his denial of accommodations was unreasonable.

37.     Mr. Langley responded to Plaintiff's complaint by saying, "It is what it is", and refused to discuss the details of Plaintiff's amended schedule any further with Plaintiff.

38.     In or around April 18, 2019, Plaintiff informed Mr. Langley that there was a good possibility that Plaintiff would have to undergo an additional surgery.

39.     Approximately twenty (20) minutes after Plaintiff mentioned to Mr. Langley that he might have to undergo additional surgery, Mr. Langley presented Plaintiff with a write-up titled "Corrective Action Notice".

40.     This Corrective Action Notice was a Final Written Warning accusing Plaintiff of work safety violations committed by his subordinates.

41.     In or around April 18, 2019, Plaintiff informed Mr. Langley of the company's progressive discipline policy consisting of: 1) verbal counseling; 2) written warning; 3) written warning with 2-day suspension; and 4) final written warning (up to termination).

42.     Before receiving said Final Warning, Plaintiff was never disciplined while employed with Defendant.

43.     Plaintiff reminded Mr. Langley that he had never received a discipline

before the issuance of the Final Warning, and that he should amend the write-up to reflect the first step in Defendant's progressive discipline policy, a verbal counseling.

44.    Mr. Langley agreed to amend the Final Written Warning to a Verbal Counseling.

45.    Both Plaintiff and Mr. Langley signed the amended Verbal Counseling write-up.

46.    In or around April 22, 2019, before Plaintiff's work shift began, he received a telephone call from Mr. Langley informing him that he was being terminated for falsifying company documents.

47.    In or around April 22, 2019, after Plaintiff was terminated, he called Human Resources to complain.

48.     Defendant's Human Resources department said they would investigate the termination and call Plaintiff back the following day.

49.    In or around April 23, 2019, never hearing from Defendant's Human Resources department, Plaintiff called again and left a voicemail.

50.    Plaintiff was forty-three (43) years old when he was terminated.

51.    Plaintiff was replaced by a male in his mid-twenties (20's) who did not have a known disability.

## V.  STATEMENT OF PLAINTIFF'S CLAIMS
### COUNT ONE
#### STATEMENT OF PLAINTIFF'S ADA/ADAAA - DISPARATE TREATMENT CLAIM

52.    In or around February 25, 2019, Plaintiff had laminectomy back surgery.

53.    Plaintiff's surgery required four (4) screws and two (2) rods to be securely fastened to his L-4 and L-5 vertebrae.

54.    In or around March 25, 2019, Plaintiff returned to work.

55.    Plaintiff was given a Fit for Duty Release document by his doctor.

56.    Plaintiff's doctor placed limitations on his return to work.

57.    Plaintiff's restrictions prevented him from: lifting any objects over five (5) pounds for an extended period of three and a half (3.5) hours while bending, stooping, kneeling and lifting; removing pallets of merchandise with a forklift safely; removing items off of pallets; or enduring similar types of physical stress until a follow up visit with his doctor on April 30, 2019.

58.    Plaintiff continued to function and operate efficiently at his job.

59.    In or around April 15-16, 2019, Plaintiff woke up with severe back and leg pain, called his doctor, and called in sick to work with a doctor's excuse.

60.    In or around April 17, 2019, Plaintiff's pain was worse and his wife drove him to the Emergency Room.

61.    Plaintiff again called his doctor and called in sick to work with a

doctor's excuse.

62.    In or around April 18, 2019, Plaintiff went back to work.

63.    Plaintiff asked Mr. Langley if he could use a walking cane or crutches to help him walk while he was at work.

64.    Mr. Langley denied his request for accommodations.

65.    In or around April 18, 2019, Plaintiff informed Mr. Langley that there was a good possibility that Plaintiff would have to undergo an additional surgery.

66.    Approximately twenty (20) minutes after Plaintiff mentioned to Mr. Langley that he might have to undergo additional surgery, Mr. Langley presented Plaintiff with a write-up titled "Corrective Action Notice".

67.    This Corrective Action Notice was a Final Written Warning accusing Plaintiff of work safety violations committed by his subordinates.

68.    In or around April 18, 2019 and shortly thereafter, Plaintiff informed Mr. Langley of the company's progressive discipline policy consisting of a: 1) verbal counseling; 2) written warning; 3) written warning with 2-day suspension; and 4) final written warning (up to termination).

69.    Before receiving said Final Warning, Plaintiff was never disciplined while employed with Defendant.

70.    In or around April 22, 2019 and before Plaintiff's work shift began, Plaintiff received a telephone call from Mr. Langley informing him that he was being

terminated for falsifying company documents.

71.    Plaintiff was replaced by a male in his mid-twenties (20's) who did not have a known disability.

72.    Defendant subjected Plaintiff to adverse treatment based on his disability by terminating his employment when he informed his supervisor he could potentially undergo a second surgery because of his disability.

73.    Plaintiff had a disability.

74.    Plaintiff was a qualified individual.

75.    Plaintiff has been discriminated against in violation of the ADA/ADAA because of his disability and/or perceived disability by Defendant.

76.    Defendant terminated Plaintiff because he had a disability.

77.    Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

78.    Defendant's illegal discriminatory, harassing and adverse actions injured Plaintiff.

79.    Defendant has a habit and/or practice of discriminating against employees that engage in protected activity.

80.    Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for back pay, front pay, compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory

judgment is his only means of securing adequate relief.

81.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the ADA/ADAAA;

b.    Grant Plaintiff a permanent injunction enjoining Defendant, its Agents Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating the ADA/ADAAA;

c.    Grant Plaintiff an Order requiring Defendant's to make him whole by granting appropriate declaratory relief, punitive damages, compensatory damages (including damages for mental anguish), interest, attorney fees, expenses, costs, and;

d.    Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT TWO

## PLAINTIFF'S CLAIMS OF RETALAITION
## PURSUANT TO ADA/ADAAA.

82.    In or around February 25, 2019, Plaintiff had back laminectomy surgery.

83.    Plaintiff's surgery required four (4) screws and two (2) rods to be securely fastened to his vertebrae.

84.    In or around March 25, 2019, Plaintiff returned to work.

85.    Plaintiff was given a Fit for Duty Release document by his doctor.

86.    Plaintiff's doctor placed limitations on his return to work.

87.    Plaintiff's restrictions prevented him from: lifting any objects over five (5) pounds for an extended period of three and a half (3.5) hours while bending, stooping, kneeling, and lifting; removing pallets of merchandise with a forklift safely; removing items off of pallets; stretching; or enduring similar types of physical stress until a follow up visit with is doctor on April 30, 2019.

88.    Plaintiff continued to function and operate efficiently at his job.

89.    In or around April 11, 2019, Plaintiff complained to Mr. Langley about the post-surgery increase in workload.

90.    Plaintiff asked Mr. Langley if he could adjust the schedule to equal out the time between the day shift and night time supervisors.

91.    Mr. Langley told Plaintiff "no" and that he "didn't have time for this."

92.     In or around April 15-16, 2019, Plaintiff woke up with severe back and leg pain, called his doctor, and called in sick to work with a doctor's excuse.

93.     In or around April 17, 2019, Plaintiff's pain was worse and his wife drove him to the Emergency Room.

94.     Plaintiff again called his doctor and called in sick to work with a doctor's excuse.

95.     In or around April 18, 2019, Plaintiff went back to work.

96.     Plaintiff asked Mr. Langley if he could use a walking cane or crutches to help him walk while he was at work.

97.     Mr. Langley denied his request for accommodations.

98.     Plaintiff complained to Mr. Langley that his denial of accommodations was unreasonable.

99.     Mr. Langley responded to Plaintiff's complaint by saying, "It is what it is", and refused to discuss the details of Plaintiff's amended schedule any further with Plaintiff.

100.   In or around April 18, 2019, Plaintiff informed Mr. Langley that there was a good possibility that Plaintiff would have to undergo an additional surgery.

101.   Approximately twenty (20) minutes after Plaintiff mentioned to Mr. Langley that he might have to undergo additional surgery, Mr. Langley presented Plaintiff with a write-up titled "Corrective Action Notice".

102.   This Corrective Action Notice was a Final Written Warning accusing Plaintiff of work safety violations committed by his subordinates.

103.   In or around April 18, 2019 and shortly thereafter, Plaintiff informed Mr. Langley of the company's progressive discipline policy consisting of: 1) verbal counseling; 2) written warning; 3) written warning with 2-day suspension; and 4) final written warning (up to termination).

104.   Before receiving said Final Warning, Plaintiff was never disciplined while employed with Defendant.

105.   Plaintiff reminded Mr. Langley that he had never received a discipline before the issuance of the Final Warning, and that he should amend the write-up to reflect the first step in Defendant's progressive discipline policy, a verbal counseling.

106.   Mr. Langley agreed to amend the Final Written Warning to a Verbal Counseling.

107.   Both Plaintiff and Mr. Langley signed the amended Verbal Counseling write-up.

108.   In or around April 22, 2019, before Plaintiff's work shift began, he received a telephone call from Mr. Langley informing him that he was being terminated for falsifying company documents.

109.   In or around April 22, 2019, after Plaintiff was terminated, he called

Human Resources to complain.

110.   Defendant's Human Resources department said they would investigate the termination and call Plaintiff back the following day.

111.   In or around April 23, 2019, never hearing from Defendant's Human Resources department, Plaintiff called again and left a voicemail.

112.   Plaintiff was replaced by a male who did not have a known disability.

113.   Plaintiff engaged in a protected activity.

114.   Defendant took an adverse employment action against Plaintiff by increasing his work hours (after returning to work on medical restrictions) and requesting two reasonable accommodations.

115.   Defendant took an adverse action (termination) against Plaintiff when he informed his supervisor of the strong likelihood that he would need to have additional surgery based on his disability.

116.   Plaintiff has been discriminated and retaliated against in violation of the ADA/ADAAA.

117.   Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

118.   Defendant's illegal, discriminatory, harassing and adverse actions injured Plaintiff.

119.   Defendant has a habit and/or practice of discriminating against

employees that engage in protected activity.

120.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.   Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the ADA/ADAAA;

b.   Grant Plaintiff a permanent injunction enjoining Defendant, its Agents Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating the ADA/ADAAA;

c.   Grant Plaintiff an Order requiring Defendant's to make him whole by granting appropriate declaratory relief, back pay, front pay, punitive damages, compensatory damages (including damages for mental anguish), interest, attorney fees, expenses, costs, and;

d.   Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT THREE

### PLAINTIFF'S REASONABLE ACCOMMODATION CLAIM PURSUANT TO THE ADA AND ADAAA

121.   In or around July 31 2017, Plaintiff began working for the Defendant as the Night Shift Supervisor at the Dollar General Warehouse.

122.   In or around February 25, 2019, Plaintiff had back surgery.

123.   Plaintiff's surgery required four (4) screws and two (2) rods to be securely fastened to his L-4 and L-5 vertebrae.

124.   Defendant knew Plaintiff was having back surgery and would be out of work for several weeks.

125.   In or around March 25, 2019, Plaintiff returned to work.

126.   Plaintiff was given a Fit for Duty Release document by his doctor.

127.   Plaintiff's doctor placed limitations on his return to work.

128.   Plaintiff's restrictions prevented him from: lifting any objects over five (5) pounds for an extended period of three and a half (3.5) hours while bending, stooping, kneeling, and lifting; removing pallets of merchandise with a forklift safely; removing items off of pallets; or enduring similar types of physical stress until a follow up visit with is doctor on April 30, 2019.

129.   Plaintiff continued to function and operate efficiently at his job.

130.   In or around April 11, 2019, Plaintiff complained to Mr. Langley about the post-surgery increase in workload.

131.   Plaintiff asked Mr. Langley if he could adjust the schedule to equal out the time between the day shift and night time supervisors.

132.   Plaintiff requested a reasonable accommodation by way of balancing the workload between each supervisor.

133.   Mr. Langley told Plaintiff "no" and that he "didn't have time for this."

134.   In or around April 15-16, 2019, Plaintiff woke up with severe back and leg pain, called his doctor, and called in sick to work with a doctor's excuse.

135.   In or around April 17, 2019, Plaintiff's pain was worse and his wife drove him to the Emergency Room.

136.   Plaintiff again called his doctor and called in sick to work with a doctor's excuse.

137.   In or around April 18, 2019, Plaintiff went back to work.

138.   Plaintiff asked Mr. Langley if he could use a walking cane or crutches to help him walk while he was at work.

139.   Mr. Langley denied his request for accommodations.

140.   Plaintiff complained to Mr. Langley that his denial of accommodations was unreasonable.

141.   Mr. Langley responded to Plaintiff's complaint by saying, "It is what it is", and refused to discuss the details of Plaintiff's amended schedule any further with Plaintiff.

142.   In or around April 18, 2019, Plaintiff informed Mr. Langley that there was a good possibility that Plaintiff would have to undergo an additional surgery.

143.   After Plaintiff requested for an accommodation for walking, Mr. Langley presented Plaintiff with a write-up titled "Corrective Action Notice".

144.   This Corrective Action Notice was a Final Written Warning accusing Plaintiff of work safety violations committed by his subordinates.

145.   Plaintiff has a disability.

146.   Plaintiff is a qualified individual pursuant to the ADA/ADAAA.

147.   Defendant knew of Plaintiff's disability.

148.   Plaintiff requested a reasonable accommodation by way of a walking cane or crutches.

149.   A walking cane or crutches would have allowed Plaintiff to perform essential functions of the job.

150.   Defendant denied Plaintiff the opportunity to use a walking cane or crutches while performing the essential functions of the job.

151.   Defendant subjected Plaintiff to adverse treatment, failed to accommodate Plaintiff, perceived Plaintiff to be disabled, harassed Plaintiff, unjustly disciplined Plaintiff, denied Plaintiff work, retaliated against Plaintiff, and subjected Plaintiff to other discriminatory and adverse terms and conditions of his employment in violation of the ADA/ADAAA.

152.   Plaintiff has been discriminated against and was denied an accommodation in violation of the ADA/ADAAA.

153.   Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

154.   Defendant's illegal discriminatory, harassing, and adverse actions injured Plaintiff.

155.   Defendant has a habit and/or practice of discriminating against employees that engage in protected activity.

156.   Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back pay, front pay, compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory, judgment is his only means of securing adequate relief.

157.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.   Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of

the Plaintiff as secured by ADA and ADAAA;

b.      Grant Plaintiff a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at the Defendant's request from violating ADA and ADAAA;

c.      Grant Plaintiff an Order requiring the Defendant to make him whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interests, attorney fees, expenses, costs; and

d.      Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT FOUR

### STATEMENT OF PLAINTIFF'S CLAIMS OF DISCRMINATION PURSUANT TO THE ADEA

158.    Plaintiff was an employee of the Defendant.

159.    In or around April 22, 2019, Plaintiff was terminated by Defendant.

160.    Plaintiff was forty-three (43) years old at the time the Defendant terminated him.

161.    Plaintiff was replaced by a male in his mid-twenties (20's).

162.    The younger employee that Defendant hired was less qualified and had less experience to fill Plaintiff's position.

163.    Defendant subjected Plaintiff to adverse treatment with respect to the terms and conditions of his employment, including but not limited to, increasing

working hours, accusing him of falsifying company documents, terminating him because of his age, and hiring a much younger worker.

164.   Similarly situated younger employees were treated more favorably than Plaintiff.

165.   Defendant has a pattern and practice of discriminating against employees over forty (40) years old.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.   Enter a declaratory judgment that Defendants policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the ADEA;

b.   Grant Plaintiff a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at the Defendant's request from violating the ADEA;

c.   Grant Plaintiff and Order requiring the Defendant to make him whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interests, attorney fees, expenses, costs; and

d.   Plaintiff prays for such other, further, different or additional relief and

benefits as justice may require.

## PLAINTIFF HEREBY REQUESTS TRIAL BY STRUCK JURY

*/s/ Nicole Davis Edwards*

*/s/ Blake Clifton Edwards*

*Attorneys for Plaintiff*

**OF COUNSEL:**
EDWARDS & EDWARDS
ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane, Suite C
Bessemer, Alabama 35022
Tel:   (205) 549-1379
Fax:  (205) 719 - 4033
E-mail: nicole@edwardsattys.com
blake@edwardsattys.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2020, I officially filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*Marion F. Walker, Esq.*
**FISHER & PHILLIPS, LLP**
2323 2ND AVENUE NORTH
Birmingham, AL 35203
Tel: (205) 327-8354
Fax: (205) 718-7607
mfwalker@fisherphillips.com

*David Klass, Esq.*
*R. Bryan Holbrook, Esq.*
**FISHER & PHILLIPS, LLP**
227 West Trade Secret
Suite 2020
Charlotte, NC 28202
Tel: (704) 334-4565
Fax: (704) 334-9774
dklass@fisherphillips.com
bholbrook@fisherphillips.com

I hereby certify that I have mailed via United States Postal Service the

foregoing document to the following non-CM/ECF participants: None.

*/s/ Blake Clifton Edwards*
OF COUNSEL