FILED
2021 Jan-18  AM 09:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RICHARD J. MCCLINTON,** | ) | |
| | ) | |
| PLAINTIFF, | ) | **CASE NO.: 2:20-cv-00543-AMM** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COGENCY GLOBAL INC,** | ) | **JURY DEMAND** |
| D/B/A **CAPSTONE LOGISITICS, LLC,** | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

## SECOND AMENDED COMPLAINT

## I. JURISDICTION

This is a suit authorized and instituted pursuant to the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the Americans with Disabilities Act Amendments Act ("ADAAA"), and the Family Medical Leave Act ("FMLA"). Jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by the ADEA, the ADA/ADAAA, and the FMLA providing injunctive and other relief against age discrimination, disability discrimination, interference FMLA violations, and retaliation in employment.

## II.  PARTIES

1.      Plaintiff, Richard J. McClinton, hereinafter "PLAINTIFF" is a male citizen of the United States and is a resident of Bessemer, Alabama.

2.      Defendant, Capstone Global Inc., d/b/a Capstone Logistics LLC, hereinafter "DEFENDANT", is a foreign corporation doing business in the state of Alabama. At all times relevant to this action, Defendant has maintained and operated a business in Alabama. Defendant is engaged in an industry affecting commerce and have fifteen (15) or more employees and are employers within the meaning of 42 U.S.C. § 2000e(b)(g) and (h). Defendant is subject to the "Age Discrimination in Employment Act" in that it is engaged in an industry affecting commerce and has had twenty (20) or more employees for each working day in each twenty (20) or more calendar weeks in the current and preceding calendar years.

## III. ADMINISTRATIVE PROCEDURES

3.      Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination and retaliation that occurred at the Defendant's worksite located in Bessemer, Alabama.

4.      This action seeks to redress unlawful employment practices resulting from the acts of Defendant, its agents, servants, and employees committed with respect to Plaintiff's employment; and for a permanent injunction restraining Defendant from maintaining a habit and/or practice of discriminating against the

Plaintiff and others similarly situated on account of age, disability, and retaliation.

5.    On August 20, 2019, within 180 days of the last discriminatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). (Doc 1-1, Exhibit A).

6.    On October 31, 2019, Plaintiff filed an Amended Charge of Discrimination with the EEOC. (Doc 1-2, Exhibit B).

7.    On January 23, 2020, Plaintiff's Notice of Right to Sue was mailed by the EEOC to Plaintiff and Plaintiff filed his initial lawsuit within ninety (90) days of receipt of his Notice of Right to Sue. (Doc 1-3, Exhibit C).

8.    All administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## IV.  FACTS

9.    In or around July 31 2017, Plaintiff began working for the Defendant as the Night Shift Supervisor at the Dollar General Warehouse.

10.    Plaintiff is a forty-four (44) year old male.

11.    Plaintiff's job was to supervise approximately twenty (20) employees.

12.    These employees lifted and unloaded boxes of merchandise off of commercial trucks by way of a forklift, pallet jack, or specialized equipment.

13.    Some of Plaintiff's job duties included payroll, issuing disciplinary actions, checking attendance, and walking throughout the warehouse in order to

oversee the operations of his employees.

14.    Plaintiff was a salaried shift supervisor for Defendant.

15.    In or around July 31, 2018, Plaintiff had worked for the Defendant for one (1) year.

16.    In or around January of 2019, Plaintiff told his direct supervisor, Mr. Donald Langley ("Langley"), that he needed back surgery.

17.    Langley told Plaintiff that nobody was getting time off and he needed him at work.

18.    In or around February 25, 2019, Plaintiff had back surgery and stayed three (3) nights in the hospital.

19.    Plaintiff's laminectomy surgery required four (4) screws and two (2) rods to be securely fastened to his vertebrae.

20.    In or around March 18, 2019, Plaintiff was given a Fit for Duty Release document from Defendant for his doctor to fill out.

21.    Plaintiff's doctor placed limitations on his return to work.

22.    Plaintiff's restrictions prevented him from lifting any objects over five (5) pounds for an extended period of three and a half (3.5) hours while bending, stooping, kneeling, and lifting; removing pallets of merchandise with a forklift safely; removing items off of pallets; or enduring similar types of physical stress until a follow up visit with his doctor on April 30, 2019.

23.    In or around March 25, 2019, Plaintiff returned to work.

24.    Plaintiff never received FMLA leave during the time of February 25, 2019 – March 25, 2019 while he was recovering from back surgery.

25.    Upon returning to work, Plaintiff resumed working his regular four (4) night shifts per week.

26.    In addition to Plaintiff's four (4) night shifts per week, his employer scheduled him to work two (2) additional thirteen (13) hour day shifts, on Saturday and Sunday.

27.    Plaintiff's workload increased from forty-eight (48) hours, to seventy-four (74) hours per week once returning from surgery.

28.    Plaintiff continued to function and operate efficiently at his job.

29.    In or around April 11, 2019, Plaintiff complained to Langley about the post-surgery increase in workload.

30.    Plaintiff asked Langley if he could adjust the schedule to equal out the time between the day shift and night time supervisors.

31.    Langley told Plaintiff "no" and that he "didn't have time for this."

32.    In or around April 11, 2019, Plaintiff went to his doctor for a post-lumbar exam.

33.    In or around April 15, 2019, Plaintiff woke up with severe back and leg pain, went to the ER, and called in sick to work with a doctor's excuse.

34.    In or around April 16, 2019, Mr. Jose Fernandez ("Fernandez"), Defendant' Vice President of Operations, emails several colleagues, informing them that Plaintiff is on a "very short leash".

35.    In or around April 17, 2019, Plaintiff's pain was worse and his wife drove him to the Emergency Room.

36.    Plaintiff again called his doctor and called in sick to work with a doctor's excuse.

37.    In or around April 17, 2019, Langley emails Ms. Sally Matteson ("Matteson"), Human Resources, and informs her that Plaintiff: has called out of work from April 15-17, 2019; cannot put any pressure on his leg; has an MRI tomorrow; and can return to work soon, but he would require the use of crutches.

38.    In Langley's April 17, 2019, email to Matteson, he also informs her that the Defendant's work conditions do not create an opportunity for Plaintiff to use crutches when returning to work.

39.    In or around April 17, 2019, Langley emails Fernandez saying that he has corrected Plaintiff in the past regarding performance issues.

40.    In or around April 18, 2019, Plaintiff went back to work.

41.    Plaintiff asked Langley again if he could use a walking cane or crutches to help him walk while he was at work.

42.    Langley denied his request for accommodations.

43.    Plaintiff complained to Langley that his denial of accommodations was unreasonable.

44.    Langley responded to Plaintiff's complaint by saying, "It is what it is", and refused to discuss the details of Plaintiff's amended schedule any further with Plaintiff.

45.    In or around April 18, 2019, Plaintiff informed Langley that there was a good possibility that Plaintiff would have to undergo an additional surgery.

46.    Approximately twenty (20) minutes after Plaintiff mentioned to Langley that he might have to undergo additional surgery, Langley presented Plaintiff with a write-up titled "Corrective Action Notice".

47.    This Corrective Action Notice was a Final Written Warning accusing Plaintiff of work safety violations committed by his subordinates.

48.    In or around April 18, 2019 and after seeing the Corrective Action Notice, Plaintiff informed Langley of the company's progressive discipline policy consisting of: 1) verbal counseling; 2) written warning; 3) written warning with 2-day suspension; and 4) final written warning (up to termination).

49.    Before receiving said Final Warning, Plaintiff was never disciplined while employed with Defendant.

50.    Plaintiff reminded Langley that he had never received a discipline before the issuance of the Final Warning, and that he should amend the write-up to

reflect the first step in Defendant's progressive discipline policy, a verbal counseling.

51.    Langley agreed to amend the Final Written Warning to a Verbal Counseling.

52.    Both Plaintiff and Langley signed the amended Verbal Counseling write-up.

53.    On Friday April 19, 2019, Matteson forwards Langley's April 17, 2019 email to Defendant's Ms. Tiffany Teamer ("Teamer") in Human Resources.

54.    On Friday April 19, 2019, Teamer responds to Matteson's email, with Langley and Fernandez copied, saying that Plaintiff is FMLA eligible and the WH-380-E and LOA request form will be mailed to his home address.

55.    In or around Monday April 22, 2019, before Plaintiff's work shift began, Langley called Plaintiff on his cell phone and informed him that he was being terminated for falsifying company documents.

56.    In or around April 22, 2019, after Plaintiff was terminated, he called Human Resources to complain.

57.    Defendant's Human Resources department said they would investigate the termination and call Plaintiff back the following day.

58.    In or around April 23, 2019, never hearing from Defendant's Human Resources department, Plaintiff called again and left a voicemail.

59.    Plaintiff never received any FMLA paperwork from the Defendant.

60.    Plaintiff was forty-three (43) years old when he was terminated.

61.    Plaintiff was replaced by a male in his mid-twenties (20's) who did not have a known disability.

## V.  STATEMENT OF PLAINTIFF'S CLAIMS
## COUNT ONE
### STATEMENT OF PLAINTIFF'S ADA/ADAAA DISPARATE TREATMENT CLAIM

62.    In or around February 25, 2019, Plaintiff had laminectomy back surgery that required four (4) screws and two (2) rods to be securely fastened to his L-4 and L-5 vertebrae.

63.    Plaintiff was hospitalized for three (3) nights after his back surgery.

64.    In or around March 25, 2019, Plaintiff returned to work.

65.    Plaintiff was given a Fit for Duty Release document by his doctor.

66.    Plaintiff's doctor placed limitations on his return to work.

67.    Plaintiff's restrictions prevented him from: lifting any objects over five (5) pounds for an extended period of three and a half (3.5) hours while bending, stooping, kneeling and lifting; removing pallets of merchandise with a forklift safely; removing items off of pallets; or enduring similar types of physical stress until a follow up visit with his doctor on April 30, 2019.

68.    In addition to Plaintiff's four (4) night shifts per week, his employer scheduled him to work two (2) additional thirteen (13) hour day shifts, on Saturday

and Sunday.

69.    Plaintiff's workload increased from forty-eight (48) hours, to seventy-four (74) hours per week once returning from surgery.

70.    In or around April 15, 2019, Plaintiff woke up with severe back and leg pain, went to the Emergency Room, and called in sick to work with a doctor's excuse.

71.    In or around April 17, 2019, Plaintiff's pain was worse and again went to the Emergency Room, called his doctor, and called in sick to work with a doctor's excuse.

72.    In or around April 17, 2019, Langley emails Ms. Sally Matteson ("Matteson"), Human Resources, and informs her that Plaintiff: has called out of work from April 15-17, 2019; cannot put any pressure on his leg; has a MRI tomorrow; and can return to work soon, but he would require the use of crutches.

73.    In Langley's April 17, 2019 email to Matteson, he also informs her that the Defendant's work conditions do not create an opportunity for Plaintiff to use crutches when returning to work.

74.    In or around April 17, 2019, Langley emails Fernandez saying that he has corrected Plaintiff in the past regarding performance issues.

75.    In or around April 18, 2019, Plaintiff went back to work.

76.    Plaintiff asked Langley if he could use a walking cane or crutches to

help him walk while he was at work.

77.    Langley denied his request for accommodations.

78.    In or around April 18, 2019, Plaintiff informed Langley that there was a good possibility that Plaintiff would have to undergo an additional surgery.

79.    Approximately twenty (20) minutes after Plaintiff mentioned to Langley that he might have to undergo additional surgery, Langley presented Plaintiff with a write-up titled "Corrective Action Notice".

80.    In or around April 22, 2019 and before Plaintiff's work shift began, Plaintiff received a telephone call from Langley informing him that he was being terminated for falsifying company documents.

81.    Defendant subjected Plaintiff to adverse treatment based on his disability by terminating his employment when he informed his supervisor he could potentially undergo a second back surgery and require the use of crutches because of his disability.

82.    Plaintiff had a disability.

83.    Plaintiff was a qualified individual.

84.    Plaintiff has been discriminated against in violation of the ADA/ADAA because of his disability and/or perceived disability by Defendant.

85.    Defendant terminated Plaintiff because he had a disability.

86.    Defendant acted with malicious intent and/or reckless disregard for

Plaintiff's federally protected rights.

87.    Defendant's illegal discriminatory, harassing and adverse actions injured Plaintiff.

88.    Defendant has a habit and/or practice of discriminating against employees that engage in protected activity.

89.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the ADA/ADAAA;

b.    Grant Plaintiff a permanent injunction enjoining Defendant, its Agents Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating the ADA/ADAAA;

c.    Grant Plaintiff an Order requiring Defendant's to make him whole by granting appropriate declaratory relief, punitive damages, compensatory damages (including damages for mental anguish), interest, attorney fees, expenses, costs,

and;

      d.     Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT TWO
### STATEMENT OF PLAINTIFF'S ADA/ADAAA RETALIATION CLAIM

      90.     In or around February 25, 2019, Plaintiff had back laminectomy surgery that required four (4) screws and two (2) rods to be securely fastened to his vertebrae.

      91.     In or around March 18, 2019, Plaintiff was given a Fit for Duty Release document by his doctor.

      92.     Plaintiff's doctor placed limitations on his return to work.

      93.     Plaintiff's restrictions prevented him from: lifting any objects over five (5) pounds for an extended period of three and a half (3.5) hours while bending, stooping, kneeling, and lifting; removing pallets of merchandise with a forklift safely; removing items off of pallets; stretching; or enduring similar types of physical stress until a follow up visit with is doctor on April 30, 2019.

      94.     In or around March 25, 2019, Plaintiff returned to work and continued to function and operate efficiently at his job.

      95.     In or around April 11, 2019, Plaintiff complained to Langley about the post-surgery increase in workload.

      96.     Plaintiff asked Langley if he could adjust the schedule to equal out the

time between the day shift and night time supervisors.

97.    Langley told Plaintiff "no" and that he "didn't have time for this."

98.    In or around April 11, 2019, Plaintiff went to his doctor for a post-lumbar exam.

99.    In or around April 15, 2019, Plaintiff woke up with severe back and leg pain, went to the Emergency Room, and called in sick to work with a doctor's excuse.

100.    In or around April 16, 2019, Fernandez, Defendant' Vice President of Operations, emails several colleagues, informing them that Plaintiff is on a "very short leash".

101.    In or around April 17, 2019, Plaintiff's pain was worse and again went to the Emergency Room, and called in sick to work.

102.    In or around April 17, 2019, Langley emails Matteson, Human Resources, and informs her that Plaintiff: has called out of work from April 15-17, 2019; cannot put any pressure on his leg; has a MRI tomorrow; and can return to work soon, but he would require the use of crutches.

103.    Additionally in Langley's April 17, 2019 email to Matteson, he tells her that the Defendant's work conditions do not create an opportunity for Plaintiff to use crutches when returning to work.

104.    In or around April 17, 2019, Langley emails Fernandez saying that he

has corrected Plaintiff in the past regarding performance issues.

105.   In or around April 18, 2019, Plaintiff went back to work.

106.   Plaintiff asked Langley again if he could use a walking cane or crutches to help him walk while he was at work.

107.   Langley denied his request for accommodations.

108.   Plaintiff complained to Langley that his denial of accommodations was unreasonable.

109.   Langley responded to Plaintiff's complaint by saying, "It is what it is", and refused to discuss the details of Plaintiff's amended schedule any further with Plaintiff.

110.   In or around April 18, 2019, Plaintiff informed Langley that there was a good possibility that Plaintiff would have to undergo an additional surgery.

111.   Approximately twenty (20) minutes after Plaintiff mentioned to Langley that he might have to undergo additional surgery, Langley presented Plaintiff with a write-up titled "Corrective Action Notice".

112.   This Corrective Action Notice was a Final Written Warning accusing Plaintiff of work safety violations committed by his subordinates.

113.   In or around April 18, 2019 and after seeing the Corrective Action Notice, Plaintiff informed Langley of the company's progressive discipline policy consisting of: 1) verbal counseling; 2) written warning; 3) written warning with 2-

day suspension; and 4) final written warning (up to termination).

114.   Before receiving said Final Warning, Plaintiff was never disciplined while employed with Defendant.

115.   Plaintiff reminded Langley that he had never received a discipline before the issuance of the Final Warning, and that he should amend the write-up to reflect the first step in Defendant's progressive discipline policy, a verbal counseling.

116.   Langley agreed to amend the Final Written Warning to a Verbal Counseling.

117.   Both Plaintiff and Langley signed the amended Verbal Counseling write-up.

118.   On Friday April 19, 2019, Matteson forwards Langley's April 17, 2019 to Defendant's Ms. Tiffany Teamer ("Teamer") in Human Resources.

119.   On Friday April 19, 2019, Teamer responds to the Matteson's email, with Langley and Fernandez copied, saying that Plaintiff is FMLA eligible and the WH-380-E and LOA request form will be mailed to his home address.

120.   In or around April 22, 2019, before Plaintiff's work shift began, he received a telephone call from Langley informing him that he was being terminated for falsifying company documents.

121.   Plaintiff was replaced by a male who did not have a known disability.

122.    Plaintiff engaged in a protected activity.

123.    Defendant took an adverse employment action against Plaintiff by increasing his work hours (after returning to work on medical restrictions) and requesting two reasonable accommodations. Defendant took an adverse action (termination) against Plaintiff when he informed his supervisor of the strong likelihood that he would need to have additional surgery based on his disability.

124.    Defendant terminated Plaintiff.

125.    Defendant took an adverse action (termination) against Plaintiff when he informed HR informed Langley that Plaintiff was entitled to medical leave due to his disability.

126.    Plaintiff has been discriminated and retaliated against in violation of the ADA/ADAAA.

127.    Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

128.    Defendant's illegal, discriminatory, harassing and adverse actions injured Plaintiff.

129.    Defendant has a habit and/or practice of discriminating against employees that engage in protected activity.

130.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined

by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the ADA/ADAAA;

b.    Grant Plaintiff a permanent injunction enjoining Defendant, its Agents Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating the ADA/ADAAA;

c.    Grant Plaintiff an Order requiring Defendant's to make him whole by granting appropriate declaratory relief, back pay, front pay, punitive damages, compensatory damages (including damages for mental anguish), interest, attorney fees, expenses, costs, and;

d.    Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT THREE

### STATEMENT OF PLAINTIFF'S ADA/ADAAA
### REASONABLE ACCOMMODATION CLAIM

131.   In or around July 31 2017, Plaintiff began working for the Defendant

as the Night Shift Supervisor at the Dollar General Warehouse.

132.   In or around February 25, 2019, Plaintiff had back surgery.

133.   Plaintiff's surgery required four (4) screws and two (2) rods to be securely fastened to his L-4 and L-5 vertebrae.

134.   Defendant knew Plaintiff was having back surgery and would be out of work for several weeks.

135.   In or around March 25, 2019, Plaintiff returned to work.

136.   Plaintiff was given a Fit for Duty Release document by his doctor.

137.   Plaintiff's doctor placed limitations on his return to work.

138.   Plaintiff's restrictions prevented him from: lifting any objects over five (5) pounds for an extended period of three and a half (3.5) hours while bending, stooping, kneeling, and lifting; removing pallets of merchandise with a forklift safely; removing items off of pallets; or enduring similar types of physical stress until a follow up visit with is doctor on April 30, 2019.

139.   Plaintiff continued to function and operate efficiently at his job.

140.   In or around April 11, 2019, Plaintiff complained to Langley about the post-surgery increase in workload.

141.   Plaintiff asked Langley if he could adjust the schedule to equal out the time between the day shift and night time supervisors.

142.   Plaintiff requested a reasonable accommodation by way of balancing

the workload between each supervisor.

143.    Langley told Plaintiff "no" and that he "didn't have time for this."

144.    In or around April 15, 2019, Plaintiff woke up with severe back and leg pain, went to the Emergency Room, and called in sick to work.

145.    In or around April 17, 2019, Plaintiff's pain was worse and again went to the Emergency Room.

146.    In or around April 17, 2019, Langley emails Matteson, Human Resources, and informs her that Plaintiff: has called out of work from April 15-17, 2019; cannot put any pressure on his leg; has a MRI tomorrow; and can return to work soon, but he would require the use of crutches.

147.    Additionally in Langley's April 17, 2019 email to Matteson, he tells her that the Defendant's work conditions do not create an opportunity for Plaintiff to use crutches when returning to work.

148.    In or around April 18, 2019, Plaintiff went back to work.

149.    Plaintiff asked Langley if he could use a walking cane or crutches to help him walk while he was at work.

150.    Langley denied his request for accommodations.

151.    Plaintiff complained to Langley that his denial of accommodations was unreasonable.

152.    Langley responded to Plaintiff's complaint by saying, "It is what it is",

and refused to discuss the details of Plaintiff's amended schedule any further with Plaintiff.

153.    In or around April 18, 2019, Plaintiff informed Langley that there was a good possibility that Plaintiff would have to undergo an additional surgery.

154.    After Plaintiff requested for an accommodation for walking, Langley presented Plaintiff with a write-up titled "Corrective Action Notice".

155.    This Corrective Action Notice was a Final Written Warning accusing Plaintiff of work safety violations committed by his subordinates.

156.    Plaintiff has a disability.

157.    Plaintiff is a qualified individual pursuant to the ADA/ADAAA.

158.    Defendant knew of Plaintiff's disability.

159.    Plaintiff requested a reasonable accommodation by way of a walking cane or crutches.

160.    A walking cane or crutches would have allowed Plaintiff to perform essential functions of the job.

161.    Defendant denied Plaintiff the opportunity to use a walking cane or crutches while performing the essential functions of the job.

162.    Defendant subjected Plaintiff to adverse treatment, failed to accommodate Plaintiff, perceived Plaintiff to be disabled, harassed Plaintiff, unjustly disciplined Plaintiff, denied Plaintiff work, retaliated against Plaintiff, and subjected

Plaintiff to other discriminatory and adverse terms and conditions of his employment in violation of the ADA/ADAAA.

163.    Plaintiff has been discriminated against and was denied an accommodation in violation of the ADA/ADAAA.

164.    Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

165.    Defendant's illegal discriminatory, harassing, and adverse actions injured Plaintiff.

166.    Defendant has a habit and/or practice of discriminating against employees that engage in protected activity.

167.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back pay, front pay, compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory, judgment is his only means of securing adequate relief.

168.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by ADA and ADAAA;

b.    Grant Plaintiff a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at the Defendant's request from violating ADA and ADAAA;

c.    Grant Plaintiff an Order requiring the Defendant to make him whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interests, attorney fees, expenses, costs; and

d.    Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT FOUR

### STATEMENT OF PLAINTIFF'S ADEA DISCRIMINATION CLAIM

169.    Plaintiff was an employee of the Defendant.

170.    In or around April 22, 2019, Plaintiff was terminated by Defendant.

171.    Plaintiff was forty-three (43) years old at the time the Defendant terminated him.

172.    Plaintiff was replaced by a male in his mid-twenties (20's).

173.    The younger employee that Defendant hired was less qualified and had less experience to fill Plaintiff's position.

174.    Defendant subjected Plaintiff to adverse treatment with respect to the terms and conditions of his employment, including but not limited to, increasing working hours, accusing him of falsifying company documents, terminating him because of his age, and hiring a much younger worker.

175.    Similarly situated younger employees were treated more favorably than Plaintiff.

176.    Defendant has a pattern and practice of discriminating against employees over forty (40) years old.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.    Enter a declaratory judgment that Defendants policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the ADEA;

b.    Grant Plaintiff a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at the Defendant's request from violating the ADEA;

c.    Grant Plaintiff and Order requiring the Defendant to make him whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interests, attorney fees, expenses,

costs; and

    d.    Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT FIVE

### STATEMENT OF PLAINTIFF'S FMLA CLAIM – INTERFERENCE

177.    In or around July 31, 2017, Plaintiff began working for the Defendant.

178.    In or around January of 2019, Plaintiff told his direct supervisor, Mr. Donald Langley, that he needed back surgery.

179.    Langley told Plaintiff that nobody was getting time off and he needed him at work.

180.    In or around February 25, 2019, Plaintiff had laminectomy surgery required four (4) screws and two (2) rods to be securely fastened to his vertebrae.

181.    Plaintiff's surgery left him in the hospital for three (3) days.

182.    In or around February 25, 2019 through March 25, 2019, Plaintiff was out of work recovering from his back surgery.

183.    In or around April 11, 2019, Plaintiff was seen by his doctor, Dr. Chambers, for a post-lumbar exam.

184.    In or around April 15, 2019, Plaintiff went to the Emergency Room for experiencing pain in his left leg and called in sick to work.

185.    In or around April 16, 2019, Fernandez, Vice President of

Operations, emails several colleagues, informing them that Plaintiff is on a "very short leash".

186.    In or around April 17, 2019, Plaintiff's pain in his left leg got worse and he went to the Emergency Room again and called in sick to work.

187.    In or around April 17, 2019, Langley emails Matteson, Human Resources, and informs her that Plaintiff: has called out of work from April 15-17, 2019; cannot put any pressure on his leg; has an MRI tomorrow; and can return to work soon, but he would require the use of crutches.

188.    In addition to Langley's April 17, 2019 email to Matteson, he also informs her that the Defendant's work conditions do not create an opportunity for Plaintiff to use crutches when returning to work.

189.    On Friday April 19, 2019, Matteson forwards Langley's April 17, 2019 to Defendant's Ms. Tiffany Teamer ("Teamer") in Human Resources.

190.    On Friday April 19, 2019, Teamer responds to the Matteson's email (with Langley and Fernandez copied) saying that Plaintiff is FMLA eligible and the WH-380-E and LOA request form will be mailed to his home address.

191.    In or around April 22, 2019, before Plaintiff's work shift began, he received a telephone call from Langley informing him that he was being terminated.

192.    Plaintiff was eligible for FMLA leave.

193.    Plaintiff was entitled to FMLA leave.

194.    Plaintiff gave the Defendant notice that he was going to have his first surgery.

195.    Plaintiff gave the Defendant notice that he was in the Emergency Room on April 15, 2019 and April 17, 2019.

196.    On April 18, 2019 told Langley that he may need an additional surgery on his back.

197.    Plaintiff was terminated.

198.    Plaintiff never received FMLA leave from the Defendant.

199.    At the time of the actions relevant to this lawsuit, Defendant had knowledge of the FMLA and its legal requirements.

200.    Defendant's actions were willful.

201.    Defendant's interference with Plaintiff's FMLA rights injured the Plaintiff.

202.    Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

203.    By terminating Plaintiff the Defendant's illegal, discriminatory, and adverse actions injured Plaintiff.

204.    Defendant terminated Plaintiff because he needed to take care of his own serious health condition.

205.    As a result of Defendant's willful and unlawful violations of the FMLA, as herein described, Plaintiff has suffered lost wages, salary, loss of career, employment benefits and/or other compensation.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the Family Medical Leave Act;

b.    Grant Plaintiff a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating the Family Medical Leave Act;

c.    Grant Plaintiff an Order requiring the Defendant to make him whole by granting appropriate declaratory relief, lost wages, backpay, liquidated damages, attorney fees, expenses, costs; and

d.    Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT SIX

### STATEMENT OF PLAINTIFF'S FMLA CLAIM - RETALIATION

206.   In or around July 31, 2017, Plaintiff began working for the Defendant.

207.    In or around January of 2019, Plaintiff told his direct supervisor, Mr. Donald Langley, that he needed back surgery.

208.    Langley told Plaintiff that nobody was getting time off and he needed him at work.

209.    In or around February 25, 2019, Plaintiff had laminectomy surgery required four (4) screws and two (2) rods to be securely fastened to his vertebrae.

210.    Plaintiff's surgery left him in the hospital for three (3) days.

211.    In or around February 25, 2019 through March 25, 2019, Plaintiff was out of work recovering from his back surgery.

212.    In or around April 11, 2019, Plaintiff was seen by his doctor, Dr. Chambers, for a post-lumbar exam.

213.    In or around April 15, 2019, Plaintiff went to the Emergency Room for experiencing pain in his left leg and called in sick to work.

214.    In or around April 16, 2019, Fernandez, Vice President of Operations, emails several colleagues, informing them that Plaintiff is on a "very short leash".

215.    In or around April 17, 2019, Plaintiff pain in his left leg got worse and he went to the Emergency Room again and called in sick to work.

216.    In or around April 17, 2019, Langley emails Matteson, Human Resources, and informs her that Plaintiff: has called out of work from April 15-17,

2019; cannot put any pressure on his leg; has a MRI tomorrow; and can return to work soon, but he would require the use of crutches.

217.    In addition to Langley's April 17, 2019 email to Matteson, he also informs her that the Defendant's work conditions do not create an opportunity for Plaintiff to use crutches when returning to work.

218.    On Friday April 19, 2019, Matteson forwards Langley's April 17, 2019 to Defendant's Ms. Tiffany Teamer ("Teamer") in Human Resources.

219.    On Friday April 19, 2019, Teamer responds to the Matteson's email (with Langley and Fernandez copied) saying that Plaintiff is FMLA eligible and the WH-380-E and LOA request form will be mailed to his home address.

220.    In or around April 22, 2019, before Plaintiff's work shift began, he received a telephone call from Langley informing him that he was being terminated.

221.    Plaintiff was eligible for FMLA leave.

222.    Plaintiff was entitled to FMLA leave.

223.    Plaintiff gave the Defendant notice that he was going to have his first surgery.

224.    Plaintiff gave the Defendant notice that he was in the Emergency Room on April 15, 2019 and April 17, 2019.

225.    On April 18, 2019 told Langley that he may need an additional

surgery on his back.

226.    Plaintiff was terminated.

227.    Plaintiff never received FMLA leave from the Defendant.

228.    At the time of the actions relevant to this lawsuit, Defendant had knowledge of the FMLA and its legal requirements.

229.    Defendant retaliated against Plaintiff for engaging in activity protected by the FMLA.

230.    Defendant's actions were willful.

231.    Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

232.    By terminating Plaintiff the Defendant's illegal, discriminatory, and adverse actions injured Plaintiff.

233.    Defendant terminated Plaintiff because he needed to take care of his own serious health condition.

234.    As a proximate result of Defendant's willful and unlawful violations of the FMLA, as herein described, Plaintiff has suffered lost wages, salary, loss of career, employment benefits and/or other compensation.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the Family Medical Leave Act;

b.    Grant Plaintiff a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating the Family Medical Leave Act;

c.    Grant Plaintiff an Order requiring the Defendant to make him whole by granting appropriate declaratory relief, lost wages, backpay, liquidated damages, attorney fees, expenses, costs; and

d.    Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

**PLAINTIFF HEREBY REQUESTS TRIAL BY STRUCK JURY**

*/s/ Nicole Davis Edwards*
*/s/ Blake Clifton Edwards*
*Attorneys for Plaintiff*

**OF COUNSEL:**
EDWARDS & EDWARDS
ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane, Suite C
Bessemer, Alabama 35022
Tel:  (205) 549-1379
Fax:  (205) 719 - 4033
E-mail: nicole@edwardsattys.com
          blake@edwardsattys.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2021, I officially filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*Marion F. Walker, Esq.*
**FISHER & PHILLIPS, LLP**
2323 2ND AVENUE NORTH
Birmingham, AL 35203
Tel: (205) 327-8354
Fax: (205) 718-7607
mfwalker@fisherphillips.com

*David Klass, Esq.*
*R. Bryan Holbrook, Esq.*
**FISHER & PHILLIPS, LLP**
227 West Trade Secret
Suite 2020
Charlotte, NC 28202
Tel: (704) 334-4565
Fax: (704) 334-9774
dklass@fisherphillips.com
bholbrook@fisherphillips.com

I hereby certify that I have mailed via United States Postal Service the foregoing document to the following non-CM/ECF participants: None.

*/s/ Blake Clifton Edwards*
OF COUNSEL