FILED

2023 Apr-18  AM 08:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RICHARD J. MCCLINTON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:20-cv-00543 AMM** |
| | ) | |
| **COGENCY GLOBAL INC d/b/a** | ) | |
| **Capstone Logistics LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## **PRETRIAL ORDER**

A pretrial conference was held in the above case on **April 17, 2023**, wherein,

or as a result of which, the following proceedings were held and actions were taken:

1.  <u>Appearances</u>. Appearing at the conference were:

    For **Richard J. McClinton:** <u>Blake C. Edwards and Nicole D. Edwards.</u>

    For **Capstone Logistics, LLC.,** <u>David Klass and Bryan Holbrook.</u>

2.  <u>Nature of the Action, Jurisdiction and Venue</u>.

    (a)  The nature of this action is as follows: Plaintiff brings claims
         against the Defendant for violations under the FMLA, ADA,
         ADAA and ADEA.

    (b)  The court has subject matter jurisdiction of this action under the
         following statutes, rules, or cases: 42 U.S.C. §§ 12102, 12111,
         12112, and 12203. 29 U.S.C. §§ 623 and 631. 29 U.S.C. §§ 2601,
         2611, 2612, 2614, and 2615.

(c)    All jurisdictional and procedural requirements prerequisite to maintaining this action have been met.

(d)    Personal jurisdiction and/or venue are not contested.

3.    <u>Parties and Trial Counsel</u>. Any remaining fictitious parties are hereby **STRICKEN.** The parties and designated trial counsel are correctly named as set out below:

|  | Parties: | Trial Counsel: |
|---|---|---|
| Plaintiff(s): | **Richard Jason McClinton** | **Nicole Edwards, Esq.** <br> **Blake Edwards, Esq.** |
| Defendant(s): | **Capstone Logistics, LLC** | **David Klass, Esq.** <br> **Bryan Holbrook, Esq.** <br> **Edward Harold, Esq.** |

4.    <u>Pleadings</u>. The following pleadings have been allowed:

a)    Second Amended Complaint filed on January 18, 2021 (Doc. 32).

b)    Answer to Second Amended Complaint filed on February 1, 2021 (Doc. 36).

5.    <u>Statement of the Case</u>.

a)    <u>Narrative Statement of the Case</u>.

On April 22, 2019, Capstone terminated McClinton's employment. McClinton alleges Capstone terminated his employment because: 1) he

suffered from a disability; 2) he asked for but was denied a reasonable accommodation for his disability; 3) he was retaliated against because of his disability; 4) he was 43 years old; 5) he was qualified, by Capstone, to take leave under the Family and Medical Leave Act (FMLA); and 6) Capstone retaliated against him by terminating him before he could take FMLA leave.

Capstone denies McClinton's allegation that he was disabled when he was fired. Capstone also denies that it violated the ADA, the ADEA, or the FMLA by firing McClinton. Capstone asserts that it terminated McClinton's employment after he falsified a corrective action form outlining multiple ongoing deficiencies that was given to him by the site manager, McClinton's boss, on April 18, 2019. Capstone also asserts that it provided McClinton all the leave he sought while employed.

b)    Undisputed Facts.

1.    Capstone's employees unload trucks at a Dollar General warehouse in Bessemer, Alabama.

2.    On July 31, 2017, McClinton began working for Capstone as a Second Shift Supervisor at the Bessemer, Alabama warehouse.

3.    The Second Shift operates Monday through Thursday beginning at 5:00 p.m. and ending 5:00 a.m. or 6:00 a.m. the following morning.

4.    McClinton supervised "unloaders" that are responsible for unloading freight and placing it onto pallets for distribution by Dollar General.

5.    McClinton worked under the direct supervision of Site Managers Travis Collins and, subsequently, Donald Langley.

6.    Capstone employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the warehouse for 20 or more workweeks in 2018 and 2019.

7.    In 2019, Capstone employed more than fifty (50) employees within 75 miles of Plaintiff's work location.

8.    McClinton worked for Capstone for more than 12 months and more

than 1,250 hours during the 12-month period before his employment was terminated.

9. Donald Langley called McClinton on his cell phone before his shift began on April 22, 2019, and informed McClinton that his employment was being terminated.

10. It has been 214 weeks since Plaintiff's termination.

c) <u>Plaintiff's Claims</u>. McClinton seeks the remedies authorized by the ADA, FMLA, and ADEA including, but not limited to declaratory relief, back pay, front pay, punitive damages, compensatory damages (including damages for mental anguish), liquidated damages, interest, attorney fees, expenses and costs. McClinton denies many of the defenses Capstone has asserted as irrelevant and inadmissible pursuant to Federal Rules of Evidence 401, 402, 403, and 404. McClinton expects to present the following facts in support of his claims:

i. PLAINTIFF'S ADA/ADAAA - DISPARATE TREATMENT CLAIM. In this case, McClinton claims that Capstone discriminated against him by terminating his employment because he had a qualified disability within the meaning of the Americans with Disabilities Act (ADA).

- **STATUTE SUED UNDER:** 42 U.S.C. § 12102(1). An individual has a disability under the ADA if he has a "physical or mental impairment that substantially limits one or more [of his] major life activities[,]" has a record of such an impairment[,]" or is "regarded as having such an impairment[,]".

- **MAJOR CASES:** In *Menefee v. Action Resources, LLC, 2020 U.S. Dist. LEXIS 233884*, "The 2008 amendments explicitly rejected several U.S. Supreme Court cases that demanded a "greater degree of limitation than

4

was intended by Congress." Pub L. 110-325, § 2(a)(7), Sept. 25, 2008, 122 Stat. 3553. *Davidson v. Affinity Hosp. LLC*, Case No.: 2:19-CV-263-RDP, at *35 (N.D. Ala. Oct. 16, 2020) "And courts have held in post-ADAAA cases that temporary injuries may qualify as disabilities." *Dykstra v. Fla. Foreclosure Attorneys*, *PLLC*, 183 F. Supp. 3d 1222, 1230 (S.D. Fla. 2016) (citing *Summers v. Altarum Inst*., *Corp*., 740 F.3d 325, 333 (4th Cir.2014); *Hodges v. D.C*., 959 F.Supp.2d 148, 154 (D.D.C.2013); 29 C.F.R. § 1630.2(j)(1)(ix)). In *U.S. Equal Emp't Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1344 (11th Cir. 2016) the evidenced shows that Bryk was substantially limited in her ability to walk. She had spinal stenosis and had undergone hip replacement in 2009. Bryk depended on the cane to alleviate back pain and to provide support for her hip. Without the cane, she could only walk short distances and would have to stop, align her body, and balance herself.

- **FACTUAL ALLEGATIONS:** In 2019 even though he provided a doctor's note to the company in April 2019 stating that he could return to work with no restrictions. This doctor's note was based off of an Emergency Room visit in which McClinton was suffering from shooting leg pains stemming from his back. Capstone states that in April 2019, McClinton did not complain of back pain as of April 15, 2019, and therefore is not disabled. However, Capstone overlooks the fact that as of April 17, 2019, Donald Langley emailed Sally Matteson informing her that McClinton may require a second back surgery and needs to use crutches. Langley then attaches McClinton's Fit for Duty Release Form which was from his first back surgery in February of 2019. (Capstone 00143-00144). It is based on this email that Tiffany Teamer (HR) determines that McClinton is eligible for FMLA leave on April 19, 2019. Alternatively, Capstone cannot raise the argument that McClinton's back issues were temporary. McClinton's back issues began back before his employment at Capstone began. Further, he and warehouse manager Travis Collins discussed McClinton's back surgery dating back to 2018.

ii.    PLAINTIFF'S ADA/ADAAA – RETALIATION CLAIM. In this case,

McClinton claims that Capstone retaliated against him because he took steps to

enforce his lawful rights under the ADA/ADAAA.

- **STATUTE SUED UNDER:** 42 U.S.C. §§ 12101-12117.

- **MAJOR CASES:** *Wiggins v. City of Montgomery*, No. 2:17-cv-425-SMD, LEXIS 148143 (M.D. Ala. Sept. 13, 2017)(citing *Brungart v. BellSouth Telecomms., Inc*., 231 F.3d 791, 799 (11th Cir. 2000)(citing *Gupta v. Fla. Bd of Regents*, 212 F.3d 571, 590 (11th Cir. 2000); *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F. 3d 926, 934(11th Cir. 1995) ("Proximity in time is sufficient to raise an inference of causation."). "However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart*, 231 F. 3d at 799 (citing *Clover v. Total Sys. Servs., Inc*., 176 F. 3d 1346, 1355-56(11th Cir. 1999)).

- **FACTUAL ALLEGATIONS:** On February 25, 2019, McClinton had his first back surgery and stayed three nights in the hospital. From April 15-17, 2019, McClinton was off from work due to shooting pains running down his legs which originated from and his back and sent him to the Emergency Room. Then, Jose Fernandez sends an email to HR and VP Fernandez that McClinton had recently returned to work from back surgery, had been out for 3 days and went to the doctor, and may require crutches. Minutes later, Jose Fernandez sends another email to staff members of Dollar General which states, "Jason appears to be struggling with some of our processes and will enter the Disciplinary Escalation Process today…" This will escalate to written warning followed by termination for any further infractions." On April 17, 2019, Langley forwards two emails to Fernandez, these emails were only emails from Langley to Langley. These emails were dated January 10, 2019 and January 23, 2019. The emails were alleged conversations that Langley had with McClinton about alleged work performance infractions committed by McClinton. On April 18, 2019, McClinton informed Langley face-to-face that he may need to have a second back surgery and would need to take time off of work. Approximately, 20 minutes later Langley give McClinton a document titled Corrective Action Notice Form, which is Capstone's title for a write-up or discipline. The Corrective Action Notice charged McClinton with "Unsatisfactory Work Performance." The notice  alleged McClinton allowed employees to work under unsafe conditions as a supervisor. Further, Langley typed in the notice that "previous expectations have been provided as well as in other conversations in regards to these concerns,"

Boxes with X's created by a computer, listed the "Action Taken" was to be a "Written" warning and not a 1st "Verbal" warning or a "Suspension." It listed the "Next Action To Be Taken" was "Termination" instead of to a "Written Warning, a "Suspension" or "Other." Before McClinton signed and dated the Corrective Action Notice, McClinton and Langley agreed to make changes to the document. They both agreed to change the notice from a 1st Written warning to a "Verbal" warning and that the next action to be taken was a "Suspension." McClinton began to change the form. Langley told McClinton that he should be the one to make the changes. McClinton had begun marking the box for "Suspension." Langley finished marking the box for "Suspension." Langley signed the Corrective Action Notice and then slid it across the table for McClinton to sign. McClinton signed the CAN.  Langley put the Corrective Action Notice in his bag as he was packing up to leave the office. After the Corrective Action Notice was signed, Langley went home and McClinton went back to work. Langley kept the Corrective Action Notice in his possession. He scanned the notice electronically into his computer along with "Supervisor Expectations" that McClinton was required to read and sign. On Thursday, April 18, 2019, Langley emailed the Corrective Action Notice along with the Supervisor Expectations to Jose Fernandez at 7:58 p.m.. McClinton was fired on April 22, 2019. McClinton's terminations of employment five days after informing Langley of the need for a second possible back surgery, establishes a close temporal proximity between the employer's protected conduct and the adverse employment action creates a causal connections between his protected activity and his termination.

iii.    PLAINTIFF'S ADA/ADAAA – REASONABLE ACCOMMODATION CLAIM. In

this case, McClinton claims that Capstone discriminated against him because of his

disability by failing to provide a reasonable accommodation for his disability within

the meaning of the Americans with Disabilities Act (ADA). McClinton had a

disability according to the ADA and was a qualified individual. Capstone knew of

McClinton's disability and his request for accommodation. McClinton could have

performed his job with a crutch or cane, but Capstone failed to provide a reasonable

7

accommodation.

- **STATUTE SUED UNDER:** 42 U.S.C. §§ 12101-12117.

- **MAJOR CASES:** *Adigun v. Express Scripts, Inc*., 742 F. App'x 474, 476 (11th Cir. 2018). A request for accommodation does not require any "magic words" but should contain "enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." The plaintiff's burden in requesting an accommodation is not an onerous one. *See Holly,* 492 F. 3d at 1261 .14 ("An employee tells her supervisor, "I'm having trouble getting to work at my scheduled starting time because of medical treatments I'm undergoing.' This is a request for a reasonable accommodation.")(also citing *Hendricks-Robinson v. Excel Corp*., 154 F. 3d 685, 694 (7th Cir. 1998)("A request as straightforward as asking for continued employment is a sufficient request for accommodation."))

- **FACTUAL ALLEGATIONS:** McClinton's neurosurgeon completed the Capstone "Fit For Duty Release (Unloader)" form. The neurosurgeon checked boxes on the form to indicate "physical job requirements" that McClinton could not "perform without restriction." McClinton gave his manager, Donald Langley, the form when he returned to work on March 25, 2019. Before McClinton had back surgery in February 2019, he worked second shift. Upon McClinton's return from work in March 2019, Mr. Langley to McClinton that he needed to work second shift and the weekend shifts. Two weeks after working the second shift plus the weekend shift, McClinton approached Mr. Langley about the new schedule he was working.  McClinton asked Langley if he could realign the schedule to not work on weekends because he just returned from surgery. The extra shifts strained McClinton's back slowing him down in performance. Mr. Langley told McClinton he could either work the shifts asked of him or quit his job. Before McClinton's shift on April 18, 2019, McClinton called Mr. Langley and asked him if he could use crutches or a walking stick to help him walk around at work. Mr. Langley told McClinton no, and that McClinton was needed at work. McClinton's employment was terminated on April 22, 2019. McClinton never received a reasonable accommodation

iv.    PLAINTIFF'S ADEA – DISCRIMINATION CLAIM. In this case, McClinton

makes a claim under the federal law that prohibits Capstone from discriminating

against him in the terms and conditions of employment because he is 43 years old.

- STATUTE SUED UNDER: 29 U.S.C. §§ 621-634.

- MAJOR CASES: *Bray v. PAETEC Communs*., Inc., 2014 WL 92708 (M.D. Fla. Jan. 9, 2014), the Court held, "Defendants contend since Bray was 49 years old at the time of his termination and he was replaced by a 42 year old there was no substantial age difference in the individuals and therefore Bray failed to establish a *prima facie* case. *Carter v. Decision One Corp*., 122d. 3d 997, 1003-04 (11th Cir. 1997); Carter a 42 year old was replaced by a 39 year old. The 11th Circuit held that an employee replacement who was only three years younger than the previous employee was sufficient to establish a *prima facie* case. *Damon v. Fleming Supermarkets of Florida, Inc*., 196 F.3d 1354, 1360 (11th Cir. 1999)(finding that a five year age difference between the plaintiff and the replacement was enough to satisfy the younger replacement requirement.)

- FACTUAL ALLEGATIONS: McClinton was 43 years old when his employment from Capstone was terminated. McClinton was replaced by Matthew Motley, who was 35 years of age at the time. This eight (8) year age difference is sufficient to establish that McClinton was replaced by an individual who is younger and thus outside of his protected class of 40 years of age or older. Therefore, McClinton was subjected to an adverse employment action by being replaced by an individual outside of his protected class.

v.   PLAINTIFF'S FMLA – INTERFERENCE CLAIM. In this case, McClinton,

claims that Capstone violated the federal law under the Family and Medical Leave

Act interference provision. McClinton expects to prove that he notified Capstone of

his need for back surgery, that he was eligible to take FMLA leave, that he was

entitled to FMLA leave, and that Capstone discharged him prior to needing FMLA

leave.

- STATUTE SUED UNDER: 29 U.S.C. §§ 2601-2654.

- MAJOR CASES: *White v. Beltram Edge Tool Supply Inc*., 789 F. 3d 1188, 1191 (11ᵗʰ Cir. 2015). 1) the employee was entitled to a benefit under the FMLA; and (2) her employer denied her that benefit." To be entitled to an FMLA benefit, an employee must, 1) "suffer from a serious health condition that make him unable to perform the functions of his position" and 2) "give proper notice" to his employer. Id. at 1194-95. "an employee's notice of his need for FMLA leave must satisfy two criteria – notice and content." White, 789 F. 3d at 1195. *Bartels  v. 402 E. Broughton St., Inc.* 173 F. Supp. 3d 1349, 1357, at * "In this case, the Court finds no evidence indicating that Plaintiff used the words "Family Medical Leave Act" or the acronym "FMLA." Plaintiff has produced evidence indicating that he informed Myron of the following: (1) his pregnant wife was experiencing problems with their unborn child; (2) he and his wife had seen multiple doctors…(3) he *would need time off in the future* as a result of this complicated pregnancy, and (4) he did not know exactly when he would need time off because…Bartels, *Id.* (citing *Wai v. Federal Express Corp.,* 461 F. App'x 876 883 (11ᵗʰ Cir. 2012)(emphasis added). *Pereda v. Brookdale Senior Living Communities, Inc.* 666 F.3d 1269, 1275, (11ᵗʰ Cir. 2012).  An employee's right to FMLA leave has been interfered with, quite clearly, when his employer terminates him "in order to avoid having to accommodate him with rightful FMLA leave rights once he becomes eligible."

- FACTUAL ALLEGATIONS: McClinton went to the Emergency room on April 15, 2019, due to leg and back pain. He was off of work from April 15, 2019 through April 17, 2019. McClinton told Langley he could not put pressure on his leg without the assistance of crutches. McClinton informed Langley that he would have an MRI on April 18, 2019, about the possibility of a second back surgery, and that if he had surgery he would have to take time off of work. McClinton gave sufficient notice to Capstone that he needed to take care of a serious health care condition under the FMLA. On April 19, 2019, at 3:42 p.m. Tiffany Teamer (HR) sends an email to Langley, copying Fernandez, and Sally Matteson, stating that "the associate (McClinton) is eligible for FMLA." On Monday April 22, 2019, before McClinton's shift started, Langley called McClinton to tell him his employment was being terminated. McClinton was never given FMLA leave to which he was entitled to receive.

10

vi.   PLAINTIFF'S FMLA – RETALIATION CLAIM.  In this case, McClinton, claims that Capstone violated the federal law under the Family and Medical Leave Act retaliation provision. McClinton expects to prove that: Capstone knew of his need for back surgery; he was eligible to take FMLA leave; he was entitled to FMLA leave; Capstone terminated him; that his termination was adverse; and his termination was because of his need for second back surgery.

- **STATUTE SUED UNDER:** 29 U.S.C. §§ 2601-2654.

- **MAJOR CASES:** *Strickland v. Water Works & Sewer Bd. Of City of Birmingham*, 239 F. 3d 1199, 1206 (11th Cir. 2001), (Stating the FMLA "prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights". Munoz v. Selig Enters. 981 F. 3d 1265, 1278 (11th Cir. 2020).  Plaintiff showed a sufficient connection between her expressed need to take leave because of her endometriosis diagnosis and being terminated for objecting to discipline for attendance issues. *Munoz*, at 1277. Munoz introduced evidence of pretext by being disciplined for attendance issues after taking leave. Munoz was fired 37 days after disclosing her diagnosis and need for leave, the court held such "close temporal proximity between a request for leave and termination" is evidence of pretext." *Munoz*, at 1278.

- **FACTUAL ALLEGATIONS:** On April 17, 2019, Mr. Langley sent an email to Sally Matteson, a member of Human Resources for Capstone. His email states "He has now called out the past three days this week - 4/15/19-4/17/19, stating he has returned to the doctor and can't put any pressure on his leg." Mr. Langley informs Ms. Matteson that he has a follow up appointment with his doctor for April 18, 2019. "Langley wrote that McClinton "did state he may be able to return to work at some point soon but would require crutches." "Our work conditions does not create an opportunity for him to return to work under those conditions." Langley ends the email on April 17, 2019, by asking Ms. Matteson, "Please advise on the direction we should proceed." The next

day Friday, April 19, 2019, at 8:06 a.m., Sally Matteson forwards the April 17, 2019, Donald Langley emails to HR Representative, Tiffany Teamer in which he discusses McClinton's time off of work the previous three days, his need for possibly having an additional back surgery, and Langley asking for advice as to whether McClinton can use crutches as an accommodation in the warehouse. Later on April 19, 2019, at 3:42 p.m. Tiffany Teamer sends an email to Langley, copying Fernandez, and Sally Matteson, stating that "the associate (McClinton) is eligible for FMLA." Teamer attached Leave of Absence paperwork that was to be sent to McClinton. Further, Teamer's mail stated, "While the associate is on LOA, please do **not** make any adjustments to the associates status." McClinton was given that Friday (Good Friday), April 19, 2019, and Saturday and Sunday (Easter Weekend) off from work. On Monday April 22, 2019, late in the afternoon, before McClinton's shift started, Langley called McClinton to tell him his employment was being terminated for "falsifying the corrective action notice." McClinton was terminated in retaliation for giving Capstone notice of his right to take FMLA leave.

d) Defendant's Defenses. Defendant identifies the following defenses pursuant to the Court's Order on March 27, 2023 (ECF No. 97). The defenses set forth below are set forth in summary format as requested and do not include recitation of all facts and legal authority that support each defense. Defendant reserves its right to present additional facts and argument at trial in this matter, including based upon Plaintiff's allegations and evidence at trial.

    i.   Defenses Applicable to All Claims

        1.  Defense 1: Plaintiff has failed to mitigate his damages. (*See* Answer to Second Amended Complaint, ECF No. 36 at 38 (Fourth Defense).) Plaintiff has failed to mitigate his damages by conducting a superficial and partial job search post-termination of his employment. Plaintiff's evidence of his job search relies exclusively on his own self-serving testimony and, presumably, inadmissible hearsay evidence related to incomplete Indeed.com job applications for positions for which he was not qualified. Defendant expects witness testimony to be presented that Plaintiff was offered a substantially equivalent position on or about September 17, 2020 by McPherson Oil, but

Plaintiff refused the position without just cause. Plaintiff's claimed inability not to find any employment whatsoever for nearly four years post termination is not credible. 42 USC §§ 2000e-5(g), (g)(1); 42 U.S.C. § 12117(a) (providing that the ADA allows the same remedies); *Weaver v. Casa Gallardo, Inc*., 922 F.2d 1515, 1527 (11th Cir. 1991) (quoting *Sellers v. Delgado Cmty. Coll*., 839 F.2d 1132, 1138 (5th Cir. 1988) (holding that plaintiff has a duty to mitigate his damages) (superseded by statute on other grounds); *Ford Motor Co. v. E.E.O.C*., 458 U.S. 219, 231 (1982).

2.  Defense 2: Plaintiff has failed to state a claim for punitive damages. (*See* Answer to Second Amended Complaint, ECF No. 36 at 38 (Third Defense).) Plaintiff has failed to state a claim for punitive damages under any theory because he has no evidence whatsoever that anyone at Defendant acted with reckless or callous indifference to any protected right and Defendant's actions were not so wanton or willful as required to state a claim.  Rather, Defendant will introduce testimony from multiple witnesses that Plaintiff was fired for falsifying a corrective action form and that the corrective action form was itself justified based on prior verbal counseling of Plaintiff and partner complaints. Defendant also will introduce multiple documents showing that Plaintiff repeatedly failed to adhere to Defendant's policies. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 529–30, 119 S. Ct. 2118, 2121, 144 L. Ed. 2d 494 (1999) ("Punitive damages are limited, however, to cases in which the employer has engaged in intentional discrimination and has done so "with malice or with reckless indifference to the federally protected rights of an aggrieved individual."); *Merard v. Magic Burgers, LLC*, No. 21-12037, 2022 WL 3023213 (11th Cir. Aug. 1, 2022); *Toney v. Alabama A&M Univ*., No. 5:21-CV-689-LCB, 2023 WL 1973203, at *5 (N.D. Ala. Feb. 13, 2023) ("An employee's failure to abide by internal organizational policy is a legitimate, nondiscriminatory reason for discharging the employee.") (citing *Kragor v. Takeda*

*Pharms. Am., Inc.*, 702 F.3d 1304, 1309 (11th Cir. 2012)). Finally, even if Plaintiff were to prevail on his FMLA claim, he is not entitled to punitive damages. *McAnnally v. Wyn S. Molded Prod., Inc.*, 912 F. Supp. 512, 513 (N.D. Ala. 1996) ("The FMLA does not provide for punitive damages…").

3. <u>Defense 3: After-Acquired Evidence</u>. (*See* Answer to Second Amended Complaint, ECF No. 36 at 37 (Second Defense).) Plaintiff's claim for lost / back wages is barred after January 23, 2021, because Defendant ceased operations at the Dollar General worksite in Bessemer, Alabama where Plaintiff worked on or about that date. Defendant would have terminated Plaintiff's employment accordingly at that time. *See Archambault v. United Computing Sys., Inc.*, 786 F.2d 1507 (11th Cir. 1986); *Holland v. Gee*, 677 F.3d 1047, 1066 (11th Cir. 2012)

4. <u>Defense 4: Plaintiff has failed to identify any comparator</u>.[1] (*See* Answer to Second Amended Complaint, ECF No. 36 at 37 (First Defense).) Plaintiff has no direct of evidence of discrimination or retaliation. Accordingly, under *McDonnell Douglas*, he must prove that he was treated less favorably than similarly situated individuals outside his protected classes, or set forth a "convincing mosaic of circumstantial evidence" leading to the "unavoidable inference" of intentional discrimination. He has not identified a single comparator and his evidence falls well short of an "unavoidable inference" of intentional discrimination. *See, e.g.*, *Jaffe v. Birmingham Gastroenterology Associates, P.C.*, N.D. Ala. No. 2:20-CV-01821-KOB, 2021 WL 4220356, at *4 (N.D. Ala. Sept. 16, 2021) (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)); *Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005).

---

[1] This defense does not apply to Plaintiff's FMLA interference claim.

5. Defense 6: Plaintiff has no evidence to support front pay. (*See* Answer to Second Amended Complaint, ECF No. 36 at 37 (First Defense).) Plaintiff fails to set forth any facts or evidence of "egregious circumstances" necessary to warrant an award of front pay. *Eskra v. Provident Life & Acc. Ins. Co*., 125 F.3d 1406, 1417 (11th Cir. 1997) ("This court has held that "front pay" is warranted only by egregious circumstances."); *Tucker v. Hous. Auth. of Birmingham Dist*., 507 F. Supp. 2d 1240, 1282 (N.D. Ala. 2006), *aff'd*, 229 Fed. Appx. 820 (11th Cir. 2007) ("because of the potential for windfall, the use of front pay must be tempered," *Lewis v. Federal Prison Industries, Inc.,* 953 F.2d 1277, 1281 (11th Cir.1992), is a special remedy to be awarded in "extenuating circumstances," *Farley v. Nationwide Mut. Ins.Co.,* 197 F.d3d 1322, 1339, and is "warranted only by egregious circumstances," *Eskra v. Provident Life and Acc. Ins. Co.,* 125 F.3d 1406, 1417 (11th Cir.1997)) (citations omitted, cleaned up). Moreover, Defendant will introduce testimony from multiple witnesses that Plaintiff was fired for falsifying a corrective action form and that the corrective action form was itself justified based on prior verbal counseling of Plaintiff for policy violations and customer complaints. Defendant also will introduce multiple documents showing that Plaintiff repeatedly failed to adhere to Defendant's policies. Finally, Defendant will show that an award of front pay cannot issue, because on or about January 23, 2021, Defendant ceased operations at the Dollar General worksite in Bessemer, Alabama. Defendant would have terminated Plaintiff's employment accordingly at that time.

ii. Count 1 of Plaintiff's Second Amended Complaint: ADA/ADAAA Disparate Treatment Claim.

1. Defense 1: Plaintiff was not disabled. (*See* First and Twelfth Defenses in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37, 39.) Plaintiff does not possess evidence sufficient to establish he was disabled as defined under

the ADAAA. While Plaintiff underwent back surgery in February 2019, he was out of work for only a few weeks and presented Capstone with two doctors' notes confirming his ability to return to work with no restrictions four days before his employment was terminated on April 22, 2019. At the time he was separated from employment, there is no evidence other than Plaintiff's own self-serving and unsupported testimony that he was disabled. *See, e.g.*, *Moore v. Jackson County Bd. Of Educ.*, 979 F. Supp. 2d 1251, 1261 (N.D. Ala. 2013); *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274-75 (3d Cir. 2012); *Gardner v. SEPTA*, 410 F. Supp. 3d 723 (E.D. Pa. 2019), *aff'd*, 824 F. App'x 100 (3d Cir. 2020); *Bush v. Donahoe*, 964 F. Supp. 2d 401, 418-19 (W.D. Pa. 2013); *Sutherland v. Boehringer-Ingelheim Pharmaceuticals, Inc.*, 700 F. App'x 955, 961 (11th Cir. 2017).

2. <u>Defense 2: Plaintiff was not a qualified individual with a disability</u>. (*See* First and Thirteenth Defenses in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37, 39.) Plaintiff was not qualified because he could not perform the essential functions of his job with or without accommodation. Plaintiff has admitted under oath he could not perform multiple functions of his job—including lifting up to 50 pounds, stacking pallets, or squatting, kneeling, or bending for three to six hours per shift— functions he admitted that he was regularly required to perform and which Defendant asserts are essential, with or without accommodation. *See, e.g.*, *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016); *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000); 42 U.S.C. § 12111(8).

3. <u>Defense 3: Plaintiff cannot show his alleged disability was the but-for cause of his separation from employment.</u> (*See* First Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37.) Plaintiff cannot show that any decisionmaker for Defendant had actual knowledge of

Plaintiff's alleged disability at the time the decision to terminate employment was made because Plaintiff presented Defendant with two doctors' notes previously that had released him to return to work with no restrictions. Further, Defendant terminated Plaintiff's employment after Plaintiff falsified a corrective action notice and given that Plaintiff had a history of poor performance, failing to enforce safety rules, and insubordination. *See, e.g.*, *Wiggins v. City of Montgomery*, No. 2:17cv425-SMD, 2019 WL 4593487, at *4 (M.D. Ala. Sept. 20, 2019); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1073 (11th Cir. 1996); *Gross v. FBLS Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *Payne v. Goodyear Tire & Rubber Co.*, 760 F. App'x 803, 809 (11th Cir. 2019); *Howard v. Steris Corp.*, 886 F. Supp. 2d 1279, 1292 (M.D. Ala. 2012), *aff'd*, 550 F. App'x 748 (11th Cir. 2013).

4. <u>Defense 4: Defendant terminated Plaintiff's employment for legitimate, non-discriminatory reasons</u>. (*See* Fifth, Seventh, Eighth, and Tenth Defenses to Defendant's Answer to Second Amended Complaint, ECF No. 36 at 38-39.) Defendant terminated Plaintiff's employment after it discovered that he had falsified a corrective action notice. Termination occurred after Plaintiff had been previously counseled and disciplined following customer complaints and for violating Defendant's policies on multiple occasions over the proceeding months. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

5. <u>Defense 5: Plaintiff has no evidence that Defendant's decision to terminate Plaintiff's employment was mere pretext for discrimination</u>. (*See* First and Tenth Defenses in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37, 39.) Plaintiff has no evidence to show pretext. Plaintiff's case is based solely upon his own self-serving, unsupported testimony that he had never been disciplined before, that he should have been given progressive discipline, and that the site manager agreed to lower the discipline level on the corrective action form

on April 18, 2019. Plaintiff's testimony, however, is contradicted by numerous pieces of documentary evidence, including but not limited to Defendant's discipline policy, which does not provide for mandatory progressive discipline, contemporaneous emails from Defendant's site manager noting he counseled Plaintiff a month before Plaintiff claims to have informed the site manager of the need to have back surgery, photographic evidence showing safety violations occurring on Plaintiff's shift, and contemporaneous emails rebutting any inference that the site manager agreed to lower the discipline. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *Hill v. Branch Banking & Tr. Co.*, 264 F. Supp. 3d 1247, 1266 (N.D. Ala. 2017); *Rioux v. City of Atlanta*, 520 F.3d 1269, 1280 (11th Cir. 2008); *Davidson v. Cspsc LLC*, 2021 Wage & Hour Cas. 2d (BNA) 231639 (11th Cir. June 22, 2021); *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1138 n.15 (11th Cir. 2020) (*en banc*); *Bartles v. S. Motors of Savannah, Inc.* 681 F. App'x 834, 838 (11th Cir. 2017); *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*); *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).

6. <u>Defense 6: Plaintiff has no evidence that Defendant regarded Plaintiff to be disabled</u>. (*See* First Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37.) Plaintiff lacks any evidence whatsoever that any decisionmaker for Defendant regarded, perceived, or believed Plaintiff to be disabled as of the date of his termination of employment. Moreover, even if such knowledge could be imputed to Capstone based on Plaintiff's uncorroborated and self-serving hearsay statement that his restrictions were in place through April 30, 2019, the claim still fails because such injury would be transitory and minor. *Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1316 (11th Cir. 2019) ("In 'regarded as' cases, a plaintiff must show that the employer knew that the employee had an actual impairment or perceived

the employee to have such an impairment at the time of the adverse employment action. Further, the impairment must not be 'transitory and minor.'") (citing 42 U.S.C. §§ 12102(3)(A), 12102(3)(B)); *see Washington v. United Parcel Serv., Inc.*, 567 F. App'x 749 (11th Cir. 2014); *Goff v. Performance Contractors, Inc.*, No. CV 18-0529-WS-MU, 2020 WL 1794967 (S.D. Ala. Apr. 8, 2020).

iii. Count 2 of Plaintiff's Second Amended Complaint: ADA/ADAAA Retaliation Claim.

   1. Defense 1: Plaintiff was not disabled. (*See* First Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37.) *See supra.*

   2. Defense 2: Plaintiff was not a qualified individual with a disability. (*See* First and Twelfth Defenses in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37, 39.) *See supra.*

   3. Defense 3: Defendant terminated Plaintiff's employment for legitimate, non-discriminatory reasons. (*See* Fifth, Seventh, Eighth, and Tenth Defenses to Defendant's Answer to Second Amended Complaint, ECF No. 36 at 38-39.) *See supra.*

   4. Defense 4: Plaintiff has no evidence that Defendant's decision to terminate Plaintiff's employment was mere pretext for discrimination. (*See* First and Tenth Defenses in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37, 39.) *See supra.*

iv. Count 3 of Plaintiff's Second Amended Complaint: ADA/ADAAA Reasonable Accommodation Claim.

   1. Defense 1: Plaintiff was not disabled. (*See* First and Twelfth Defenses in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37, 39.) *See supra.*

2. <u>Defense 2: Plaintiff was not a qualified individual with a disability</u>. (*See* First and Thirteenth Defenses in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37, 39.) *See supra.*

3. <u>Defense 3: Plaintiff did not engage in protected activity</u>. (*See* First Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37.) Plaintiff never sought a reasonable accommodation: he only ever asked to use crutches, which he admits would not have enabled him to perform tasks that Defendant determined to be essential. Plaintiff merely recasts his disability discrimination claim as a retaliation claim, impermissibly. *Shepard v. United Parcel Serv., Inc*., N.D. Ala. No. 5:08-CV-0906-SLB, 2011 WL 13175671, at *15 (N.D. Ala. Mar. 28, 2011), aff'd, 470 Fed. Appx. 726 (11th Cir. 2012) (The plaintiff "bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions.") (quoting *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1259, 1255-56, 1261 (11th Cir. 2001)).

4. <u>Defense 4: Plaintiff did not make a reasonable accommodation request</u>. (*See* Fourteenth Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 40.) The fit for duty release completed by Dr. Chambers failed to provide any end date for the restrictions contained therein, and as such, the restrictions were indefinite. The indefinite restrictions were unreasonable as a matter of law. Similarly, using a cane or crutches would not have permitted Plaintiff to perform the essential functions of his position, which required extensive walking, lifting, squatting, and other physically demanding tasks. Further, any request for time off, which Defendant denies Plaintiff made, would not have allowed him to perform the essential functions of his position.  *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016).

5. <u>Defense 5: Plaintiff's requests for accommodation presented an undue hardship on Defendant</u>. (*See* Fourteenth Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 40.) The fit for duty release completed by Dr. Chambers prevented Plaintiff from completing multiple functions of Plaintiff's job that Defendant determined to be essential. Similarly, using a cane or crutches would not have permitted Plaintiff to perform the essential functions of his position, which required extensive walking, lifting, squatting, and other physically demanding tasks. Further, any request for time off, which Defendant denies Plaintiff made, would not have allowed him to perform the essential functions of his position. Defendant had only one supervisor onsite during Plaintiff's shift—Plaintiff—and therefore would have been required to hire another individual to perform the essential functions that Plaintiff could not perform. *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 (11th Cir. 1997) ("The ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer.") (citing 42 U.S.C. § 12112(b)(5)(A)); *Earl v. Mervyns*, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000); *Moore v. Jackson Cnty. Bd. of Educ.*, 979 F. Supp. 2d 1251, 1264 (N.D. Ala. 2013) ("[B]efore an employer has a duty to show undue hardship, the plaintiff first must show that a reasonable accommodation exists.") (citing *Willis v. Conopco, Inc.*, 108 F.3d 282, 286 (11th Cir. 1997)).

6. <u>Defense 6: Plaintiff has no evidence that Defendant regarded Plaintiff to be disabled</u>. (*See* First Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37.) *See supra*.

v. <u>Count 4 of Plaintiff's Second Amended Complaint: ADEA Discrimination Claim</u>.

1. <u>Defense 1: Plaintiff was not replaced by a substantially younger employee</u>. (*See* First Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37.) Plaintiff was 43 years old when he was fired; his replacement was 35 years old at that time. *See, e.g.*, *Suarez v. Sch. Bd. Of Hillsborough County, Fla.*, 638 F. App'x 897, 901, n.1 (11th Cir. 2016); *Steele v. United States VA*, 2011 WL 2160343, at *10 (M.D. Fla. June 1, 2011).

2. <u>Defense 2: Plaintiff was not qualified to perform his job</u>. (*See* First Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37.) Plaintiff was not qualified because he could not perform the essential functions of his job with or without accommodation. Plaintiff has admitted under oath he could not perform multiple functions of his job—including lifting up to 50 pounds, stacking pallets, or squatting, kneeling, or bending for three to six hours per shift—which functions he admitted that he was regularly required to perform and which Defendant asserts are essential, with or without accommodation. *See, e.g.*, *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354 (11th Cir. 1999); *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016); *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000); 42 U.S.C. § 12111(8).

3. <u>Defense 3: Plaintiff cannot prove that age was a but-for cause of his termination from employment.</u> (*See* First Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37.) Plaintiff's lone evidence of age discrimination is that he was replaced by someone eight years younger than him. Plaintiff lacks evidence sufficient to show that age factored into any individual's decision to terminate Plaintiff's employment. Further, Defendant terminated Plaintiff's employment after Plaintiff falsified a corrective action notice indicating that Plaintiff had a history of poor performance, failing to enforce safety rules, and insubordination. *Suarez v. Sch. Bd. Of Hillsborough County, Fla.*, 638 F. App'x 897, 901, n.1 (11th

22

Cir. 2016); *Steele v. United States VA*, 2011 WL 2160343, at *10 (M.D. Fla. June 1, 2011); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

4. <u>Defense 4: Defendant terminated Plaintiff's employment for legitimate, non-discriminatory reasons</u>. (*See* Fifth, Seventh, Eighth, and Tenth Defenses to Defendant's Answer to Second Amended Complaint, ECF No. 36 at 38-39.) *See supra*.

5. <u>Defense 5: Plaintiff has no evidence that Defendant's decision to terminate Plaintiff's employment was mere pretext for discrimination</u>. (*See* First and Tenth Defenses in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37, 39.) *See supra*.

vi. <u>Count 5 of Plaintiff's Second Amended Complaint: FMLA Interference Claim</u>.

1. <u>Defense 1: Plaintiff cannot prove Defendant denied him a benefit to which he was entitled under the FMLA</u>. (*See* First and Sixteenth Defenses in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37, 40.) Defendant granted Plaintiff all his requested leave after his back surgery in February 2019. Defendant also paid Plaintiff his full salary while on leave, and Plaintiff obtained short-term disability benefits for that leave. Plaintiff's alleged statement that may need additional leave at some undetermined point in the future does not support a denial of a benefit. *See, e.g.*, *Bartels v. S. Motors of Savannah, Inc.*, 681 F. App'x 834, 840 (11th Cir. 2017); *Hollan v. Web.com Group, Inc.*, N.D. Ga. No. 114CV00426LMMWEJ, 2015 WL 11237023, at *22 (N.D. Ga. Apr. 7, 2015), *report and recommendation adopted*, N.D. Ga. No. 1:14-CV-00426-LMM, 2015 WL 11237033 (N.D. Ga. July 1, 2015).

2. <u>Defense 2: Plaintiff has no evidence of damages</u>. (*See* First and Fifteenth Defenses in Defendant's Answer to Second Amended

Complaint, ECF No. 36 at 37, 40.) Defendant granted Plaintiff all his requested leave after his back surgery in February 2019. Defendant also paid Plaintiff his full salary while on leave, and Plaintiff obtained short-term disability benefits for that leave. Plaintiff has identified no damages for his claim or evidence to support damages. *See Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847 (11th Cir. 2009); *Aponte v. Brown & Brown of Fla., Inc.*, 806 F. App'x 824, 828 (11th Cir. 2020) ("Even if the defendant has committed certain technical infractions under the FMLA, the plaintiff may not recover in the absence of damages.") (quoting *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999) (internal brackets omitted)).

3. Defense 3: Plaintiff did not provide notice of need to take leave after March 2019. (*See* Fifteenth Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 40.) After Plaintiff returned from his leave in March 2019 immediately after his back surgery, Plaintiff never requested additional leave from Defendant or provided notice to Defendant that needed additional leave. Plaintiff's allegation that he told Langley there was a "possibility" that he may need leave in the future is insufficient as a matter of law. *See, e.g.*, *Bartels v. S. Motors of Savannah, Inc.*, 681 F. App'x 834, 840 (11th Cir. 2017); *Hollan v. Web.com Group, Inc.*, N.D. Ga. No. 114CV00426LMMWEJ, 2015 WL 11237023, at *22 (N.D. Ga. Apr. 7, 2015), *report and recommendation adopted*, N.D. Ga. No. 1:14-CV-00426-LMM, 2015 WL 11237033 (N.D. Ga. July 1, 2015); *Blake v. City of Montgomery, Alabama*, 492 F. Supp. 3d 1292, 1305 (M.D. Ala. 2020), *aff'd sub nom. Blake v. City of Montgomery*, (11th Cir. Nov. 8, 2021).

vii.  <u>Count 6 of Plaintiff's Second Amended Complaint: FMLA Retaliation Claim</u>.

1.  <u>Defense 1: Plaintiff cannot prove that engaging in protected activity under the FMLA caused his termination from employment.</u> (*See* First Defense in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37.) Plaintiff lacks any evidence of causation between engaging in protected activity under the FMLA and being fired other than the temporal proximity between the two events. This is insufficient as a matter of law to prove causation, and Plaintiff's own misconduct—falsifying the correction action notice—severed any causal connection. *DeLeon v. St. Mobile Aerospace Eng'g, Inc.*, 684 F. Supp. 2d 1301, 1325 (S.D. Ala. 2010) (citing *Hankins v. AirTran Airways, Inc.*, 237 F. App'x 513, 520 (11th Cir. 2007)).

2.  <u>Defense 3: Defendant terminated Plaintiff's employment for legitimate, non-discriminatory reasons</u>. (*See* Fifth, Seventh, Eighth, and Tenth Defenses to Defendant's Answer to Second Amended Complaint, ECF No. 36 at 38-39.) *See supra*.

3.  <u>Defense 4: Plaintiff has no evidence that Defendant's decision to terminate Plaintiff's employment was mere pretext for discrimination</u>. (*See* First and Tenth Defenses in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 37, 39.) *See supra*.

4.  <u>Defense 5: Plaintiff is not entitled to liquidated damages</u>. (*See* Fifth, Seventh, Eighth, Ninth, and Tenth Defenses in Defendant's Answer to Second Amended Complaint, ECF No. 36 at 38-39.) Defendant acted in good faith in providing Plaintiff with his leave requests. It provided him all the leave he requested and paid him his full salary during that leave. When

human resources became aware of his leave—Plaintiff failed to provide advanced notice of his surgery—it began to take steps to classify the leave as FMLA leave. However, Plaintiff's own intervening misconduct—falsifying the corrective action notice—prevented that process from being completed prior to termination. Defendant acted in good faith to comply with its FMLA obligations. *See Aponte v. Brown & Brown of Fla., Inc.*, 382 F. Supp. 3d 1318 (M.D. Fla. 2019), *aff'd*, 806 F. App'x 824 (11th Cir. 2020); *Cleveland v. Jefferson Cnty. Bd. of Educ.*, No. 2:15-CV-01538-JEO, 2017 WL 1806826, at *9 (N.D. Ala. May 5, 2017) ("[E]ven if an employee is terminated and thereby denied rights protected by the FMLA, the employer is not liable for unlawful interference if it can establish, as an affirmative defense, that it dismissed the plaintiff for reasons unrelated to leave.") (citing multiple cases in accord)); *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010) ("These circuits have concluded that an employee who requests FMLA leave has no greater protection against her employment being terminated for reasons unrelated to an FMLA request than she did before submitting the request.").

6.   <u>Discovery and Other Pretrial Procedures</u>.

   (a)   <u>Pretrial Discovery</u>.

      i.   Pursuant to previously entered orders of the court, discovery is closed.

   (b)   <u>Pending Motions</u>.

      i.   Plaintiff's Motion for Sanctions to Defendant (Doc. 93).

      iii.   The parties anticipate filing motions *in limine* by the deadline set forth in Section 6(c)(v) of this order.

      iii.   Capstone will be filing a motion to remove Cogency Global, Inc. ("Cogency") from the case caption. Capstone

26

contends that Cogency is not a proper defendant, as its role was limited to accepting service of process for Capstone.

(c)   Deadlines.

    i.    Witness lists shall be filed on or before **April 28, 2023**.

    ii.    Objections to witness lists shall be filed on or before **May 17, 2023.**

    iii.    Exhibit lists shall be filed on or before **April 28, 2023**.

    iv.    Objections to exhibit lists shall be filed on or before **May 17, 2023.**

    v.    Motions *in limine* shall be filed on or before **May 8, 2023.**

    vi.    Responses to motions *in limine* shall be filed on or before **May 15, 2023**.

    vii.    A joint proposed jury charge and verdict form shall be filed on or before **May 22, 2023**. If the parties have agreed on questions that they would like for the court to consider asking during voir dire, the parties should include those questions in this filing.

    viii.    No later than thirty (30) calendar days before the date set for trial, the parties shall file and serve a list itemizing all damages and equitable relief being claimed or sought; such list shall show the amount requested and, where applicable, the method and basis of computation.

7.    Trial Date.

(a)    This case is set for **Jury Trial on May 30, 2023.**

(b)    The trial of this matter is expected to last **4** days.

8.    The parties are to read and comply fully with each provision contained in Exhibits A and B to this order, which are incorporated into this order by reference as if fully set forth herein.

The court **ORDERS** that the above provisions be binding on all parties unless modified for good cause shown.

**DONE** and **ORDERED** this 18th day of April, 2023.

_____

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE